UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ROLAND D. JOHNSON, JR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Civil Action No. 04-1045 (PLF) |
| JOHN E. POTTER, | ) | |
| Postmaster General, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

This case is before the Court on defendant's motion for summary judgment. Upon consideration of defendant's motion, plaintiff's opposition, and the entire record in the case, the Court grants summary judgment in favor of defendant.

I.  BACKGROUND

Plaintiff Roland Johnson, an African-American male, brings this employment discrimination and retaliation case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Mr. Johnson alleges that his employer, the United States Postal Service ("USPS"), discriminated against him based on his race and retaliated against him for filing EEOC complaints when it failed to accept plaintiff into a temporary supervisor training program.

Plaintiff works for USPS as a Vehicle Operations Maintenance Assistant ("VOMA") at the Capitol Heights Post Office in Capitol Heights, Maryland. Among other responsibilities, VOMAs perform minor repairs on postal vehicles and coordinate larger projects with supporting Vehicle Maintenance Facilities ("VMFs"). On February 26, 2001, Timothy

Currie, Manager of Vehicle Maintenance at the VMF located at 400 T Street, N.E., Washington, D.C., sent a letter inviting "All Capitol [sic] District Vehicle Maintenance Facility Employees" to apply for a 204B Supervisor (Temporary Supervisor) training program, expressing his view that it was best to promote from within the VMF.  See Exhibit ("Def. Ex.") 2 to Defendant's Memorandum of Points and Authorities in Support of its Motion to Dismiss and/or Motion for Summary Judgment ("Def. Mem.").  The letter was followed by a formal announcement that stated: "Eligibility Requirements: All Career Capitol District VMF Employees are Eligible to Apply for This Program."  Def. Ex. 3.  Applicants were required to submit a 991 Form (Postal Service Application for Promotion) in order to be considered for the training.  See id.

Plaintiff and twenty other individuals, all VMF employees except for plaintiff, applied for the program and a review committee ranked the applicants.  Twelve were selected for a round of interviews, including plaintiff, who was ranked twelfth out of twenty-one.  See Declaration of Timothy Currie ("Currie Decl.") ¶¶ 15-16.  Mr. Currie interviewed plaintiff and again rated him twelfth.  Id. ¶ 22.  Six employees were selected by Currie for the training program: three Caucasians and three African-Americans.  Plaintiff was not selected and learned of this on July 27, 2001.  Id. ¶ 23.  He filed an informal complaint with the USPS's Office of EEO Compliance and Appeals on August 31, 2001 and exhausted all administrative remedies before filing suit.  This is plaintiff's fourth EEO complaint since 1998.

Plaintiff alleges that he was subjected to racial discrimination and also suffered retaliation for filing his EEO complaint.  He first alleges that as a "VMF Craft Employee" he was eligible for the program.  Plaintiff also asserts that two other applicants, Preston Miller and William "Gene" Morris, both Caucasian, received preferential treatment during the application

process. Currie allowed Morris to review Currie's own 991 Form; Currie also allowed Miller to enter the training program without submitting any application. Defendant responds that plaintiff is not a VMF employee but a Capitol Heights Post Office employee who did not meet the eligibility requirements for the program. See Currie Decl. ¶ 17 ("The committee erroneously ranked plaintiff's application along with the others, despite the fact that plaintiff was not employed at the VMF which was a precondition for applying to the program."). Currie further declares that he showed his 991 Form to any person who asked to review it, and that plaintiff never did so, and declares that Miller was not required to submit an application because he already had been serving as a 204B Supervisor when the training program was announced. See id. ¶¶ 13-14, 25.

Plaintiff also claims that his "eligibility status was abruptly changed to 'ineligible' upon filing an EEO complaint." Complaint at 2. Mr. Currie declares, however, that he did not know plaintiff prior to the interview and was unaware of plaintiff's prior EEO activity. See Currie Decl. ¶ 22.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The movant has the initial burden of "pointing out" that there is "an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477

U.S. 317, 325 (1986).  If the movant meets this burden, the non-movant "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  The non-movant must produce more than a mere "scintilla of evidence" or evidence that is "merely colorable." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Instead, "there must be evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

### B.  *Plaintiff's Discrimination Claim*

To survive a motion for summary judgment on a Title VII employment discrimination claim, the plaintiff must introduce evidence to support a *prima facie* case of discrimination, showing that: (i) he is a member of a protected class; (ii) he has suffered an adverse employment action; and (iii) the unfavorable action gives rise to an inference of discrimination.  George v. Leavitt, 407 F.3d 405, 412 (D.C. Cir. 2005); Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002); Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999).  A plaintiff can establish an inference of discrimination by showing that he was treated differently from "similarly situated employees who are not part of the protected class," but this is not the only way to satisfy the test.  George v. Leavitt, 407 F.3d at 412; Holbrook v. Reno, 196 F.3d 255, 261 (D.C. Cir. 1999).[1]  A plaintiffs also can establish such an inference by demonstrating that the adverse action is not due to "an absolute or relative lack of qualifications or the absence of a

---

[1] Defendant's memorandum in support of summary judgment misstates the law by claiming that plaintiff *must* establish that "similarly situated employees outside of his protected class were treated more favorably in like circumstances," a position emphatically rejected in George v. Leavitt, 407 F.3d at 412.

vacancy in the job sought." Stella v. Mineta, 284 F.3d at 145. See George v. Leavitt, 407 F.3d at 412-13.

Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment action, although the ultimate burden of persuasion always rests with the plaintiff. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-09 (1993). While the plaintiff is then free to demonstrate that the defendant's proffered reasons are pretextual, "mere conjecture that [an] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1998); see also Cuddy v. Carmen, 694 F.2d 853, 857-58 (D.C. Cir. 1982); Hyman v. First Union Corp., 980 F. Supp. 46, 50 (D.D.C. 1997) ("For summary judgment purposes, a non-moving plaintiff must produce evidence from which a rational trier of fact could infer that the employer's proffered reasons were pretextual and that the employer instead relied on some discriminatory motive.").

The parties agree that plaintiff is African-American and therefore a member of a protected class under Title VII. Nonetheless, the Court finds that plaintiff has failed to proffer evidence sufficient to demonstrate that the decision not to select him for the training program gives rise to an inference of discrimination, as plaintiff does not identify similarly situated employees outside of the protected class who received better treatment or demonstrate that less qualified individuals were selected for the program.

Plaintiff points to the allegedly preferential treatment accorded to Gene Morris and Preston Miller, similarly situated employees outside of plaintiff's protected class, as evidence of racial discrimination. Mr. Currie's unrefuted declaration states, however, that he had

5

announced that, upon request, anyone could review his 991 Form, and that Miller was accepted into the training program without filling out an application because he was already serving as a 204B Supervisor.  See Currie Decl. ¶¶ 14, 25.  Furthermore, unlike plaintiff, every other applicant for the training program was a VMF employee, which was a stated prerequisite for the position.  Although plaintiff asserts that he is a "VMF Craft Employee," see Plaintiff's Statements of Disputed Material Facts and Response to Defendant's Motion to Dismiss and Summary Judgment ("Pl.'s Resp.") ¶ 2, defendant presents several exhibits indicating that plaintiff works at the Capitol Heights Post Office in Maryland and therefore is not a VMF employee.  See Def. Ex. 1, 4, 6; Currie Decl. ¶¶ 17, 22.  While plaintiff previously worked in a VMF and often coordinates repairs with VMFs as part of his work as a VOMA, he is no longer a VMF employee working at a VMF.  See id.

      Plaintiff has also failed to introduce evidence demonstrating that the adverse action was not due to his lack of qualifications for the program.  By contrast, defendant offers evidence that plaintiff was less qualified than other applicants for the program.  Mr. Currie ranked plaintiff twelfth out of twenty-one applicants for the position before the final twelve were interviewed, and the review committee ranked him last among all the candidates interviewed.  See Currie Decl. ¶ 16.  Plaintiff has neither addressed this issue nor accused USPS of selecting less qualified candidates.  Plaintiff has not met his burden of making out a *prima facie* case of employment discrimination, as he has brought forth no evidence suggesting that USPS's decision not to select him for the training program gives rise to an inference of discrimination.

### *C. Plaintiff's Retaliation Claim*

To survive defendant's motion for summary judgment, plaintiff must establish a *prima facie* case of retaliation by showing that: (i) he engaged in a protected activity; (ii) he was subject to adverse action; and (iii) a causal connection exists between the two.  Paquin v. Federal National Mortgage Association, 119 F.3d 23, 31 (D.C. Cir. 1997).

Plaintiff alleges that he suffered retaliation in that he became "ineligible [to apply for the training program] only after filing an EEO complaint."  Pl.'s Resp. ¶ 10.  Although it is not clear to which EEO complaint plaintiff refers, as he has filed several, the most recent EEO complaint was filed on August 31, 2001, a month *after* plaintiff was informed that he had not been selected for the training program.  Def.'s Ex. 5-6.

Plaintiff also presents no evidence that defendant retaliated against plaintiff because of his previous EEO activity.  Mr. Currie declares that he had never met plaintiff prior to plaintiff's interview and was unaware of plaintiff's previous EEO activity.  See Currie Decl. ¶¶ 20-21.  Currie, who interviewed the candidates for the program and made the final selections, had never been plaintiff's supervisor and did not work in the same facility as plaintiff.  Id. ¶¶ 4, 15.  Plaintiff does not dispute these claims or put forth any direct evidence of a causal connection between his EEO activity and the adverse employment action, nor does he suggest that any other USPS official who might have known of plaintiff's EEO activity was ultimately responsible for the decision not to accept plaintiff into the 204B training program.[2]  Because plaintiff has not

---

[2]  Plaintiff also cannot argue plausibly that the temporal proximity between the filing of his previous EEO complaints and defendant's failure to select plaintiff for the training program is sufficient evidence of causality.  "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality . . . uniformly hold that the temporal proximity must be 'very

offered evidence from which a causal connection between plaintiff's protected activity and the alleged adverse action may be inferred, the Court finds that plaintiff has failed to establish a *prima facie* case for retaliation.

### III.  CONCLUSION

For the foregoing reasons, the Court finds that plaintiff has failed to make out a *prima facie* case of either discrimination or retaliation.  The Court therefore grants summary judgment in favor of defendant.  An Order and Judgment consistent with this Memorandum Opinion will issue this same day.

|  |  |
|---|---|
| DATE: August 3, 2005 | /s/_____<br>PAUL L. FRIEDMAN<br>United States District Judge |

---

close.'"  Clark Co. School District v. Breeden, 532 U.S. 268, 273 (2001) (citing O'Neil v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 1997)).  Plaintiff filed his previous EEO complaint in April 2000, sixteen months prior to his rejection from the training program, and this period is simply too long to serve as evidence of causality.  See Willson v. Suntrust Bank, 2004 WL 2958303, *1 (D.C. Cir. 2004); see also Buggs v. Powell, 293 F. Supp. 2d 135, 149 (D.D.C. 2003) (finding a seven month span between the filing of an EEOC complaint and an adverse employment action too long to serve as evidence of causality); Garrett v. Lujan, 799 F. Supp. 198, 202 (D.D.C. 1992) (finding eleven month span too long to serve as evidence of causality).